Steve **MARLOWE** and Patty **Marlowe**

v.

The **UNITED STATES.**

No. 3–80T.

United States Claims Court.

June 23, 1983.

---

Steve Marlowe and Patty Marlowe, pro se.

J.G. Philpott, Jr., Washington, D.C., for defendant. Asst. Attys. Gen. Glenn L. Archer, Jr., and Theodore E. Peyser, Jr., Washington, D.C., of counsel.

## OPINION

WHITE, Senior Judge:

The plaintiffs, Patty Marlowe and Steve Marlowe, seek in this action to recover small sums—$3.65 (plus interest) in the case of Patty Marlowe and $1.28 (plus interest) in the case of Steve Marlowe—which they remitted to the Internal Revenue Service (IRS) in June 1979. The sums just mentioned were in partial payment of 100-percent penalties that the IRS had assessed against the plaintiffs individually in November 1978 under section 6672 of the Internal Revenue Code of 1954 (the 1954 Code).

Each penalty assessment was in the amount of $32,554.91 (plus $3.50 as collection fees and costs) for the four quarters of 1977. The assessments were made on the basis of an administrative determination that each of the plaintiffs was required, and had willfully failed, to pay over to the United States certain income taxes and taxes under the Federal Insurance Contributions Act (FICA) that had been withheld in 1977 from the wages of employees of a New Mexico corporation known as Marlowe Country, Inc. (the corporation).

The defendant has counterclaimed for the respective unpaid balances of the penalties previously mentioned, *i.e.,* for $32,554.76 (plus interest) allegedly due from Patty Marlowe and for $32,557.13 (plus interest) allegedly due from Steve Marlowe.

## Marlowe Country, Inc.

The corporation was originally organized under the laws of New Mexico on October 15, 1974, as Viva, Inc. Two weeks later, on October 29, 1974, the name of the corporation was changed to Marlowe Country, Inc.

From the time of the corporation's organization until June 1, 1977, Patty Marlowe was the president, a director, and the sole shareholder of the corporation (she provided the corporation's capital of $7,700), and Steve Marlowe was the secretary-treasurer and a director of the corporation. At the beginning, Kenneth E. Bain, Patty Marlowe's father, was named as a director of the corporation, as it was understood by Patty Marlowe and Steve Marlowe that a New Mexico corporation was required to have a minimum of three directors. However, Kenneth E. Bain never took an active part in the affairs of the corporation (or, indeed, any part, so far as the evidence in the record shows).

The corporation maintained its office in Deming, New Mexico. During the early period of its existence, the corporation's business consisted of buying lots in the Deming area, building houses on the lots, and then selling them. In actual operation, the construction activities and the real estate activities were handled as separate divisions of the corporation. Steve Marlowe was in charge of all phases of the corporation's construction work, including the hiring and firing of construction workers. Patty Marlowe, on the other hand, was in charge of all aspects of the corporation's real estate business, including the purchase of lots on which to build houses, advertising the houses for sale, and selling the houses. Before the organization of the corporation, she had become acquainted with the real estate field by working as a legal secretary in an attorney's office for a few years and by working 4 years for some architects. She like the real estate field and became a certified residential specialist in that field. In selling the corporation's houses, Patty Marlowe operated through a corps of real estate sales people, who were not employed by the corporation but handled sales activities as agents working on a commission basis.

The employees of the corporation consisted of the construction workers previously mentioned and an office secretary, who was hired by Patty Marlowe. Steve Marlowe handled the computation and preparation of the corporation's payroll, the withholding of income and FICA taxes from the wages of employees, the payment of wages to employees, and the depositing of the taxes withheld from the wages of employees.

Steve Marlowe also determined which bills from the corporation's creditors would be paid by the corporation. However, Patty Marlowe was authorized to sign checks on the corporation's bank accounts; and, when Steve Marlowe was absent from Deming on account of travel, she would draw checks to pay bills if instructed to do so by Steve Marlowe.

Patty Marlowe did not devote her full time to running the corporation's real estate business. In addition, she operated her own, separate real estate business. In this separate business, she sold "second-hand" houses for persons other than the corporation (she sold newly constructed houses only for the corporation).

In 1975 or 1976, the corporation began to expand its activities. It began by building some houses in or near the town of Truth or Consequences, New Mexico. Then, in 1977, the corporation began to construct some commercial buildings in New Mexico, in Arizona, and in Nevada.

In the spring of 1977, the corporation's expanded activities had become too extensive for its limited financial resources. The corporation was experiencing difficulty in paying bills incurred in the course of the expanded construction activities, and debts were accumulating. This was worrisome to Patty Marlowe, as she felt that the financial problems of the corporation were hurting her separate real estate business and her reputation as a previously successful businesswoman. In addition, the personal relationship between Patty Marlowe and Steve Marlowe had become strained. In May 1977, Patty Marlowe decided that she

would completely sever her connection with the corporation and devote herself fulltime to her separate real estate business.

On May 15, 1977, the Board of Directors of the corporation, consisting of Patty Marlowe and Steve Marlowe, held a formal meeting in Deming, New Mexico. At that meeting, it was agreed by the directors that Patty Marlowe would resign her position as president and director of the corporation; that the corporation's real estate business would be split out of the corporation and be taken over by Patty Marlowe, who would assume the debts of the corporation relating to the real estate business; that Patty Marlowe's real estate broker's license would be transferred out of the corporation and she would thereafter operate individually in the real estate field; and that she would sell her stock in the corporation, totalling 770 shares and consisting of all the issued and outstanding stock, to Steve Marlowe for $1.

The steps agreed upon at the May 15, 1977, meeting of the corporation's Board of Directors were subsequently taken, with the result that, as of June 1, 1977, Patty Marlowe no longer had any official connection with the corporation as an officer, director, stockholder, or employee; and thereafter she did not receive any money from the corporation. Since June 1, 1977, she has operated individually as a real estate broker under a license issued in her name by the Real Estate Commission of New Mexico. She has conducted her business in the same building where the office of the corporation is located.

Throughout the remainder of 1977, after Patty Marlowe divested herself of her financial interest in, and official connection with, the corporation, the authorizations for Patty Marlowe to sign checks on the corporation's accounts in the Deming National Bank and the Hot Springs National Bank remained in effect. On some occasions during the period mentioned, when Steve Marlowe was away from Deming, he would get in touch with Patty Marlowe and ask her to issue a check in a certain amount on a corporation bank account to a specified creditor of the corporation, and she would do so.

### The Trust Funds

For the four quarters in 1977, FICA taxes were withheld from the wages of the corporation's employees in accordance with section 3102(a) of the 1954 Code, and income taxes were withheld pursuant to section 3402(a). Under section 7501(a) of the 1954 Code, the funds so withheld constituted a special fund in trust for the United States, and they were to be paid over to the Government at the end of each quarter.

These trust funds were not paid over to the United States, as required by law, but, instead, were used to pay on the debts of the corporation.

In view of the corporation's failure to pay the trust funds over to the United States, the Internal Revenue Service in November 1978 assessed against each of the plaintiffs individually a 100-percent penalty in the amount of $32,554.91 (plus $3.50 as collection fees and costs), purportedly under the authority of section 6672 of the 1954 Code.

Section 6672 provided in part as follows in 1977 (26 U.S.C. § 6672 (1976)):

> Any person required to collect, truthfully account for, and pay over any tax * * * who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. * * *

### Claim of, and Counterclaim Against, Steve Marlowe

It will be noted that section 6672 of the 1954 Code provided in 1977 (and still provides in slightly different language) for the assessment of a 100-percent penalty against "[a]ny person required to collect * * and pay over any tax * * * who willfully fails" to do so.

In a situation where a corporation has defaulted in the payment of trust funds over to the United States, the question as to whether a certain officer or employee of the corporation was the person, or one of the persons, who had the responsibility and authority to avoid the default depends upon all the facts of the particular case. *Burack v. United States,* 198 Ct.Cl. 855, 868, 461 F.2d 1282, 1291 (1972).

It was held by this court's predecessor, the U.S. Court of Claims, that the word "willfully," as used in section 6672, means a deliberate choice—voluntarily, consciously, and intentionally made—to pay other creditors instead of paying the Government, and that it is not necessary that there be present in a particular case an intent to defraud or deprive the United States of taxes due. *White v. United States,* 178 Ct.Cl. 765, 778–79, 372 F.2d 513, 521 (1967).

At the trial of the present case, Steve Marlowe conceded that he was the officer of the corporation responsible for the withholding of taxes from the wages of corporation employees during 1977 and paying such taxes over to the Government, that such taxes were withheld, and that "no doubt" the funds were used to pay other creditors of the corporation pursuant to his instructions. Hence, his case seems to fall squarely within the ambit of section 6672 of the 1954 Code.

Steve Marlowe's defense at the trial was that, at the time when the 100-percent penalty was assessed against him individually, the corporation had other assets that were available and could have been used to discharge the corporation's liability to the Government, and, therefore, that the 100-percent penalty should not have been assessed against him as an individual. In connection with this defense, it appears that, in about October 1977, an official of the IRS District Office in Albuquerque, New Mexico, got in touch with Steve Marlowe about the corporation's failure to pay over to the Government the trust funds collected by the corporation for the previous quarters of 1977. At that time, the corporation had an equity in a house in Deming on which a bank had foreclosed a mortgage (as an incident of the financial difficulties that the corporation was experiencing) and which had been sold at a foreclosure sale for $48,000. The redemption period for the house, which had an appraised value of $79,000, was still in effect. Steve Marlowe proposed, and the IRS official agreed, that an attempt be made to utilize this property as a means of discharging the corporation's obligation to the Government.

In connection with Steve Marlowe's proposal, the IRS official explained to him that the IRS had available to it a provision whereby funds could be secured with which to redeem property that had been foreclosed on for an amount much smaller than its value, and the property could then be offered for public sale. Under such a plan, a prospective buyer would be required to deposit 20 percent of the reasonable price for the property, as previously determined, under an agreement whereby the amount of deposit would be forfeited if the prospective purchaser ultimately failed to consummate the agreement by actually purchasing the property at the price stated. The purpose of including such a forfeiture provision was to eliminate frivolous offers.

Steve Marlowe located a person who was willing to pay $73,000 for the property in question, and this amount was agreeable to the IRS as a reasonable price. The prospective buyer was willing to enter into a regular purchase agreement for the property, but he declined to sign the form of agreement prescribed by the IRS, which called for a forfeiture of the deposit or down payment if he ultimately failed to purchase the property at the price stated in the agreement. Consequently, no deal was made with the prospective purchaser located by Steve Marlowe.

No other buyer for the property was found during the redemption period. It was after the end of the redemption period that the 100-percent penalty was assessed against Steve Marlowe.

The evidence in the record indicates that the IRS displayed a reasonably cooperative attitude in connection with the attempt

that was made to utilize property in which the corporation had an equity for the purpose of discharging the corporation's liability to the Government with respect to the 1977 trust funds. Certainly, there was no improper action taken by the IRS, and no failure by the IRS to take proper action, in connection with this or any other matter that would estop the Government from proceeding to assess against Steve Marlowe a 100-percent penalty under section 6672 of the 1954 Code because of his willful failure, as a responsible officer of the corporation, to pay over the 1977 trust funds to the United States.

Therefore, Steve Marlowe is not entitled to recover on his claim, and the Government is entitled to recover on its counterclaim against Steve Marlowe.

### Claim of, and Counterclaim Against, Patty Marlowe

As stated earlier in the opinion, under the division of responsibility which Patty Marlowe and Steve Marlowe agreed upon for the operations of the corporation through May 31, 1977, it was Steve Marlowe's responsibility to compute and prepare the corporation's payroll, withhold income and FICA taxes from employees' wages, pay employees their wages, deposit the withheld taxes, and pay over the withheld taxes to the Government at the end of each quarter.

Up until October 1977, Patty Marlowe was unaware that the corporation was in default with respect to its obligation to pay the trust funds over to the United States. At the time when Patty Marlowe learned of the default, she was no longer an officer, director, shareholder, or employee of the corporation.

■ Patty Marlowe, however, as indicated earlier in the opinion, was the president, a director, and the sole shareholder of the corporation through May 31, 1977, and she had the authority to draw checks on the corporation's bank accounts in order to discharge financial obligations of the corporation. In this combination of capacities, Patty Marlowe certainly had such a connection with the corporation as to place upon her the responsibility, along with Steve Marlowe, to collect, account for, and pay over to the United States the employment taxes that were payable on the wages of employees. The court concludes that her failure, during the first 5 months of 1977, to keep herself adequately informed concerning the details of the corporation's strained financial situation, including the extent of the corporation's unpaid obligations to creditors and whether the corporation was discharging its obligation to pay over the trust funds to the United States, constituted negligence on the part of Patty Marlowe. However, mere negligence on the part of an officer or employee of a corporation in connection with a corporate default on the payment of trust funds over to the United States does not constitute willfulness, within the meaning of section 6672 of the 1954 Code. See Bauer v. United States, 211 Ct.Cl. 276, 289, 543 F.2d 142, 150 (1976).

■ Although "reckless disregard of a known risk that the trust funds may not be remitted to the Government" satisfies the willfulness requirement of section 6672 (Garsky v. United States, 600 F.2d 86, 91 (7th Cir.1979)), the court concludes that Patty Marlowe's nonfeasance in the present case cannot properly be characterized as reckless disregard of a known risk.

Of course, Patty Marlowe was aware in October 1977 and thereafter that the corporation had failed to discharge its obligation to pay over the trust funds to the United States. During that period, however, Patty Marlowe did not have any official connection with the corporation. The mere circumstance that she occasionally, as an unpaid volunteer acting at the request of Steve Marlowe, drew checks on the corporation's bank accounts to pay bills submitted to the corporation was not sufficient to make her a "person required to collect, truthfully account for, and pay over" employment taxes to the Government.

It necessarily follows that the assessment of the 100-percent penalty in this case against Patty Marlowe was not justified, that she is entitled to recover on her claim,

and that the defendant is not entitled to recover on its counterclaim against Patty Marlowe.

## CONCLUSION OF LAW

Upon the foregoing opinion and the facts, as found by the court and stated in the opinion, the court concludes as a matter of law:

(1) that the plaintiff Steve Marlowe is not entitled to recover, and the complaint will thereore be dismissed as to him;

(2) that the plaintiff Patty Marlowe is entitled to recover, and judgment will therefore be entered for her in the amount of $3.65, together with interest computed in accordance with section 6611 of the 1954 Code;

(3) that the defendant is entitled to recover on its counterclaim against Steve Marlowe, and judgment will therefore be entered for the United States against Steve Marlowe in the amount of $32,557.13, together with interest computed in accordance with section 6601 of the 1954 Code; and

(4) that the defendant is not entitled to recover on its counterclaim against Patty Marlowe, and the counterclaim against her will therefore be dismissed.

IT IS SO ORDERED.