H. Edward SULGER, Jr., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 460–89T.

United States Claims Court.

Nov. 26, 1991.

Geoffrey J. O'Connor, Garden City, N.Y., for plaintiff.

Bartholomew Cirenza, with whom was Asst. Atty. Gen., Shirley D. Peterson, Washington, D.C., for defendant.

OPINION

ANDEWELT, Judge.

In this tax action, the Internal Revenue Service (IRS), pursuant to Section 6672 of the Internal Revenue Code, 26 U.S.C. (the Code), assessed a penalty against plaintiff, H. Edward Sulger, Jr., for failing to segregate and pay over to the IRS social security and income taxes withheld from employees of Dynamic Instrument Corporation (Dynamic). The tax years in issue are 1981 through 1983. Plaintiff paid a portion of this penalty and then brought the instant action seeking a refund of that payment. In response to plaintiff's complaint, defendant filed a counterclaim seeking payment of the remainder of the penalty.

Upon consideration of the evidence presented at trial and the parties' post-trial filings, this court finds for defendant. For the reasons set forth below, plaintiff's complaint is dismissed and defendant is granted judgment on its counterclaim.

I.

Section 6672(a) of the Code provides that the IRS can impose a tax penalty equal to the total amount of an employer's unpaid taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof...." Section 6671(b), in turn, defines the term "person" as "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." Courts frequently have applied the shorthand phrase "responsible person" to a "person" who fits the definition in Section

6671(b). *See, e.g., Slodov v. United States,* 436 U.S. 238, 246 n. 7, 98 S.Ct. 1778, 1784 n. 7, 56 L.Ed.2d 251 (1978).

The issues presented to this court for decision, therefore, are (1) whether plaintiff was a "responsible person" under a duty to collect, truthfully account for, and pay over the withheld taxes; and, if so, (2) whether plaintiff willfully evaded or defeated payment of these taxes. *Godfrey v. United States,* 748 F.2d 1568, 1574 (Fed.Cir.1984).

## II.

Plaintiff's father, Harold E. Sulger, Sr., founded Dynamic in 1951. Upon his father's death in 1975, plaintiff inherited approximately 200,000 common shares of Dynamic stock and became the largest single shareholder with 34% of the outstanding stock. Plaintiff was appointed chairman of the board of directors and president of Dynamic. At the time, the only other officer of Dynamic was William J. Glaser, who served as executive vice president, treasurer, and controller. Glaser also served on the board of directors. He and plaintiff were the only two "inside" directors on the five-person board.[1] During Glaser's tenure as a full-time employee of Dynamic, plaintiff focused primarily on sales and production and Glaser handled primarily financial matters.[2] However, both plaintiff and Glaser had financial responsibilities and each was authorized to sign company checks.

Dynamic's financial condition began to deteriorate and in July 1981, the board of directors informed Glaser that Nelson Ortiz, Jr., a Dynamics employee hired by plaintiff in July 1980, would assume greater responsibilities in the company. This decision apparently was based, in part, on pressure from Walter E. Heller & Company Southeast (Heller), Dynamic's principal lender and factor. On July 17, 1981, Glaser resigned from Dynamics and left plaintiff the sole corporate officer and the only "inside" Dynamic director. One of the reasons Glaser resigned was that he was concerned that Ortiz would divert tax funds to cover production expenses. Less than two months later, on September 9, 1981, Ortiz was appointed vice president. In addition to continuing to serve as president, plaintiff also served as corporate secretary. Both plaintiff and Ortiz had check-signing authority.

On September 30, 1981, Dynamic failed to pay to the IRS $60,111.77 in taxes that it had withheld from its employees' pay checks. Glaser, who had remained at Dynamic as a full-time consultant until October 15, 1981, informed plaintiff on one or two occasions that this tax payment was not made. On November 9, 1981, Dynamic filed for bankruptcy under Chapter 11. At that time, plaintiff, who had signed the bankruptcy petition, knew that Dynamic owed unpaid taxes. Indeed, the list of creditors annexed to the petition named the IRS as a creditor.

The bankruptcy court left Dynamic's management structure essentially unchanged and made Dynamic "Debtor-in-Possession." However, despite repeated demands and notices from the IRS, Dynamic failed to pay the taxes due on September 30, 1981, and also failed subsequently to pay other withheld taxes as they became due. Dynamic failed to turn over withheld employee taxes on December 31, 1981 ($53,451.98), March 31, 1982 ($9,903.88), June 30, 1982 ($20,200), September 30, 1982 ($67,042.44), December 31, 1982 ($88,331.16), and March 31, 1983 ($6,794.70).

Although Dynamic's failure to pay the taxes continued, plaintiff repeatedly represented to the bankruptcy court the contrary. On January 21, February 26, March 18, and June 15, 1982, plaintiff submitted sworn and notarized statements in which he affirmed that "all tax monies and all other deductions required by operating order of this [bankruptcy] court have been withheld, have been segregated and paid over in accordance with said court order."

In June 1982, apparently in response to Heller's threat that it would terminate Dynamic's financing if Ortiz was not made

---

1. The other three directors were not salaried and their sole compensation was director fees.

2. In addition to his other duties, plaintiff became national sales manager in early 1981.

president, the board of directors appointed Ortiz as president of Dynamic in place of plaintiff. Plaintiff remained chairman of the board and chief executive officer and, in addition, on August 8, 1982, assumed the position of acting vice president of sales.[3]

Throughout the bankruptcy proceedings, both before and after Ortiz was promoted to president, plaintiff continued signing company checks. Between September 30, 1981, the date of the first tax delinquency, and Ortiz's appointment as president in June 1982, plaintiff signed at least five checks totalling $19,177.42. During this same period, Dynamic incurred $123,467.63 in unpaid employment taxes. Between Ortiz's June 1982 appointment as president and January 18, 1983, plaintiff signed at least six checks totalling $17,508.42. During this same period, Dynamic incurred an unpaid tax liability of $175,573.60. Sometime in late January 1983, Ortiz resigned.[4] On March 16, 1983, the bankruptcy court issued an order converting Dynamic's Chapter 11 bankruptcy action to a Chapter 7 proceeding.

On May 4, 1983, Heller filed suit against plaintiff, Ortiz, and Glaser for RICO and civil fraud arising out of false documents submitted by Dynamic to obtain financing from Heller. Glaser settled the action for $4,000. Judgment was ordered against Ortiz, who defaulted, for treble RICO damages in the amount of $461,895.50. On June 23, 1986, plaintiff consented to a judgment for civil fraud in the amount of $153,-965.30. In the settlement agreement, plaintiff admitted that he knowingly made false statements to Heller in an effort to induce Heller to continue to provide funds to Dynamic.

On July 2, 1984, the IRS notified plaintiff that a penalty was assessed against him under Section 6672 in the amount of $305,-835.93. On August 9, 1984, plaintiff re-

sponded and stated that the correct amount was $261,399.00, and that "it is also important to note this is a shared responsibility with that of the former President of Dynamic Instrument Corp., Mr. Nelson Ortiz."

### III.

### *"Responsible Person" Test*

The Court of Appeals for the Federal Circuit discussed the identification of a "responsible person" at some length in *Godfrey*. The court indicated that the proper focus of such an inquiry is the individual's authority within the business with respect to the expenditure of funds and the payment of taxes. The court explained:

> The overwhelming weight of case precedent requires the factfinder to look through the "mechanical functions of the various corporate officers," *White v. United States*, [178 Ct.Cl. 765, 771], 372 F.2d [513], 516 [(1967)], to determine the persons having "the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obligations." *Haffa v. United States*, 516 F.2d 931, 936 (7th Cir. 1975). The inquiry required by the statute is "a search for a person with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes." *White v. United States*, [178 Ct.Cl. at 772], 372 F.2d at 517.

748 F.2d at 1575.

Citing *Pacific Nat'l Ins. Co. v. United States*, 422 F.2d 26, 30–31 (9th Cir.), *cert. denied*, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970), the court further explained that it is not necessary that the individual be an officer or employee of the corporation "so long as [the individual is] in

---

**3.** During trial, plaintiff denied that he was chief executive officer and stated that the position of vice president of sales was not a corporate officer position. However, this court is persuaded to the contrary by the evidence presented at trial, including an August 8, 1982, interoffice memorandum from Ortiz which stated that plaintiff was chief executive officer. In any event, given all of plaintiff's other positions and

responsibilities, this court's decision would be the same if plaintiff never had the title of chief executive officer.

**4.** A January 27, 1983, newspaper article appearing in *Newsday* identified plaintiff as president of Dynamic.

fact responsible for controlling corporate disbursements.... [The statute] reaches those who have 'the final word as to what bills should or should not be paid, and when.'" *Godfrey*, 748 F.2d at 1575. The court then listed some of the factors that go into making such a determination, as follows:

As the case law makes abundantly clear, a person's "duty" under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds. It is a test of substance, not form. Thus, where a person has authority to sign the checks of the corporation, or to prevent their issuance by denying a necessary signature, or where that person controls the disbursement of the payroll, or controls the voting stock of the corporation, he will generally be held "responsible."

*Id.* at 1576 (citations omitted).

Applying the *Godfrey* analysis to the instant facts, plaintiff was at all relevant times a "responsible person" with the duty to pay over to the IRS the withheld taxes. At all times, plaintiff was the largest shareholder, the chairman of the board of directors, and had authority to sign checks for any amount without the approval of any other person. He actively participated in the day-to-day operation of Dynamic either as president, national sales manager, and/or vice president of sales. He negotiated and signed contracts, had the power to hire and fire employees, and earned a substantial salary. Given his positions and the resulting authority, plaintiff had the power and ability to control the expenditure of funds. He could determine whether to pay available funds to the IRS or to any other Dynamic creditor. Indeed, if he had decided to pay the IRS the taxes owed, he could have written a check.

Plaintiff bases his contention that he was not a "responsible person" essentially on the argument that he was not involved in day-to-day management of financial affairs. He contends that such responsibility had been initially entrusted to Glaser and later to Ortiz. But at the time the first tax payment was missed, Glaser was only a consultant and was not an officer or director of Dynamic. Indeed, the record indicates that Glaser was very concerned about IRS obligations and that he would not have gone along with any decision not to pay the withheld taxes.

As to Ortiz, it is true that Ortiz was assigned significant responsibility for financial matters. Plaintiff contends, in effect, that this assignment was made because Dynamic was at Heller's mercy and Heller wanted Ortiz to have increased authority. But even if plaintiff had chosen to respond to Heller's financial pressure and grant Ortiz significant financial powers, this would not free plaintiff of potential liability. Even assuming Ortiz were a "responsible person," this would not mean that plaintiff was not. There can be more than one "responsible person" liable for an employer's unpaid taxes. Indeed, a person can be liable under Section 6672 even if others had exercised greater authority in the management of the corporation. *Godfrey*, 748 F.2d at 1574–75; *Gephart v. United States*, 818 F.2d 469, 476 (6th Cir. 1987); *Scott v. United States*, 173 Ct.Cl. 650, 657, 354 F.2d 292, 296 (1965).

The evidence at trial simply does not support a conclusion that plaintiff ever divested himself of the power and ultimate authority to determine what bills should be paid and when. Plaintiff and the board of directors never handed absolute financial authority over to Ortiz. Plaintiff and Ortiz shared this authority. Plaintiff maintained the unlimited ability to write checks and frequently did so. Plaintiff's continued influence over all important matters of Dynamic, including financial matters, was demonstrated in his November 29, 1982, memorandum to a subordinate. In that memorandum, plaintiff stated that "[h]iring and firing of all sales representatives shall be the direct responsibility of [plaintiff]," "[f]inal pricing to be given to customers or reps shall be determined by [plaintiff]," and "[p]otential orders of 50,-000 pieces or $100,000 in value shall dictate a personal visit by David Baum or [plaintiff]. (Subject to cash flow considerations—final decision to be made by N. Ortiz and [plaintiff].)"

There simply was never the type of complete delegation of authority that could support a conclusion that plaintiff no longer had the requisite authority to be a "responsible person." *See, e.g., White v. United States*, 178 Ct.Cl. 765, 774, 372 F.2d 513, 519–20 (1967); *Lawrence v. United States*, 299 F.Supp. 187, 191 (N.D.Tex. 1969); *Hammon v. United States*, 21 Cl. Ct. 14, 26 (1990). Accordingly, the court finds that plaintiff had the requisite authority during all relevant periods in suit to qualify as a "person" under the definition in Section 6671(b).

## IV.

*Willfulness Test*

■ As described above, identification as a "responsible person" is not itself sufficient to produce liability under Section 6672(a). The statute, in addition, requires that the responsible person "willfully fail[ed]" or "willfully attempt[ed] ... to evade or defeat" payment of taxes. The evidence in this case demands a conclusion that plaintiff willfully failed to pay the withheld taxes to the IRS.

## A.

First, the evidence at trial warrants a conclusion that plaintiff was a knowing participant with Ortiz in a plan to keep Dynamic operating and that this plan involved, in part, not paying the IRS taxes owed. Plaintiff disputes such a conclusion. He places the blame for failing to pay exclusively on Ortiz and alleges that plaintiff believed Ortiz was paying the taxes. But Ortiz did not testify at trial and blaming the "empty chair" rings hollow here.

Dynamic was in financial trouble and, in view of plaintiff's large personal stake in Dynamic, it is reasonable to expect that plaintiff would have been interested in and paid attention to the financial condition of the company during bankruptcy. Moreover, plaintiff apparently had a larger direct financial interest in Dynamic than Ortiz.[5] In this context, it is not apparent that Ortiz would have chosen to face the personal risks inherent in not paying taxes without bringing plaintiff into the plan, or that Ortiz could have expected that plaintiff would not have discovered the plan. Plaintiff suggests a financial reason for Ortiz keeping plaintiff uninformed—Heller had a large interest in Dynamic and Ortiz was doing Heller's bidding. But Heller's subsequent civil fraud suit against Ortiz strongly indicates that Ortiz was not working exclusively for Heller.

There is other evidence that supports the conclusion that plaintiff was a participant in the determination not to pay taxes. For example, even though plaintiff was warned by Glaser that Ortiz had missed at least one tax payment, plaintiff did not take the steps necessary to assure that taxes were paid. Instead, plaintiff concurred in promoting Ortiz to the corporate presidency. But perhaps the most damaging evidence relating to the credibility of plaintiff's denial of involvement is the evidence indicating that plaintiff himself resorted to untrue statements when he was attempting to manage Dynamic's financial problems. Plaintiff admitted in his civil fraud consent judgment with Heller that he had knowingly made false statements in an effort to secure continued financing from Heller. In addition, plaintiff repeatedly made sworn statements to the bankruptcy court to the effect that taxes had been paid, when they in fact had not. Plaintiff's effort to justify his statement in the consent judgment and his false statements to the bankruptcy court are simply not convincing.[6] The

---

**5.** No evidence was presented which could indicate that Ortiz owned any stock.

**6.** Plaintiff contends that he admitted to civil fraud in the consent judgment only to end the Heller suit. He alleges that the settlement resulted in no additional financial penalty to him because he had previously agreed to be personally liable to Heller for any inaccurate submissions, regardless of fault. But this explanation

is not persuasive. If plaintiff was already liable for payment and not guilty of fraud, it is not apparent that Heller would have proceeded with the fraud suit against plaintiff or insisted on plaintiff making an admission to a nonexistent fraud. Moreover, the admission was far from a meaningless statement to which plaintiff would agree. Phrased as it is, the admission clearly and directly reflected a lack of integrity on plaintiff's part. Presumably, plaintiff would

court finds plaintiff's testimony that he was not aware that taxes were not paid not to be credible. The court finds that plaintiff knew that taxes were not being paid and willfully evaded payment of the taxes.

### B.

The court's conclusion that plaintiff acted intentionally is based on inferences it draws from the facts presented at trial. But even if different inferences were drawn, and no such specific intentional action was found, a finding that plaintiff acted willfully would still be in order. A "responsible person" can be found to have willfully defeated a tax payment if that person acts "with a reckless disregard of a known or obvious risk" that taxes will not be paid, "such as by failing to investigate or to correct mismanagement after being notified that withholding taxes have not been duly remitted." *Godfrey*, 748 F.2d at 1578, *quoting Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). The Court of Appeals for the Seventh Circuit stated in *Wright v. United States*, 809 F.2d 425, 428 (7th Cir.1987), as follows:

> [I]f a responsible officer knows that the corporation has recently committed such a delinquency and knows that since then its affairs have continued to deteriorate, he runs the risk of being held liable if he fails to take any steps either to ascertain, before signing checks, what the state of the tax withholding account is, or to institute effective financial controls to guard against non-payment.

Here, the same facts that permit an inference of intentional wrongdoing warrant a finding that plaintiff at least acted with reckless disregard of a known risk. Although he was warned about a tax delinquency, plaintiff failed to institute effective controls to guard against nonpayment and, in addition, signed sworn statements that falsely indicated that the taxes had been paid. To the extent plaintiff relied upon

Ortiz, he was reckless to have done so. *See, e.g., Newsome v. United States*, 431 F.2d 742 (5th Cir.1970). Plaintiff knew that Ortiz had failed to make the first delinquent payment. Moreover, to the extent plaintiff actually believed Ortiz was primarily concerned with protecting Heller's interests, Heller, in a sense, was a "competitor" with the IRS for Dynamic's funds. Plaintiff should have taken the necessary steps to assure that Ortiz fulfilled Dynamic's obligations to the IRS first. For these reasons, the court finds that plaintiff acted willfully within the meaning of Section 6672(a).

### *Conclusion*

For the reasons set forth above, plaintiff was a "person required to collect" employment taxes. Because plaintiff willfully failed to pay over such taxes and willfully attempted to defeat payment of such taxes, plaintiff is not entitled to a refund of monies paid and defendant is entitled to judgment on its counterclaim. The Clerk of the Court is directed to enter judgment accordingly. No costs.

IT IS SO ORDERED.

---

value his reputation for integrity highly. Next, plaintiff contends that statements to the bankruptcy court were not willfully false because plaintiff thought the taxes had been paid. But based on all the evidence summarized above,

the court does not believe that plaintiff would have so little knowledge about the actual financial condition of Dynamic during the bankruptcy period.