Richard E. DOUGHERTY, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

Leo BROWN, Jr., Third-Party Defendant.

Civ. No. 69–118S.

United States District Court, D. South Dakota, S. D.

May 24, 1971.

Ronald W. Banks, of Costello, Porter, Hill, Banks & Nelson, Rapid City, S. D., for plaintiff.

William V. McPherson, Jr., Dept. of Justice, Washington, D. C., for defendant and third-party plaintiff.

Steven L. Jorgensen, Sioux Falls, S. D., for third-party defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This is an action by the plaintiff to recover $58.53 paid by him as a 100 per cent penalty tax with respect to social security and federal income taxes withheld from the employees of Wheel Sports, Inc., during the tax quarters ended September 30, 1965, September 30, 1966, and December 31, 1966. The defendant has counterclaimed for the unpaid balance due from Dougherty on the total assessment of $7,633.69 and has filed a third-party complaint against Brown seeking to recover $7,633.69 due on an assessment arising from the tax quarters. The assessments were levied by the Internal Revenue Service against Brown and Dougherty pursuant to 26 U.S.C. Sec. 6672, which provides that:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

The case was tried to the court without a jury.

## FINDINGS OF FACT

(1) On August 18, 1964, Wheel Sports, Inc., was incorporated in the State of South Dakota. Wheel Sports engaged in the business of selling and renting motorcycles in a five state area pursuant to a franchise agreement entered into with U. S. Suzuki Corporation. Although each local dealership had a manager possessed of a certain degree of autonomy, the several operations constituted a single entity for income and payroll tax purposes. A single employer identification number was obtained from the Internal Revenue Service. All payroll taxes were reported under the Wheel Sports number. The ultimate control over the entire operation was in the officers and directors of Wheel Sports.

(2) A 100 per cent penalty has been assessed against both Dougherty and Brown, pursuant to 26 U.S.C. Sec. 6672,

for social security and federal income taxes withheld by Wheel Sports but not paid to the Internal Revenue Service in the following amounts:

Quarter ended September 30, 1965 -------------------- $5,473.01
Quarter ended September 30, 1966 -------------------- $1,860.99
Quarter ended December 31, 1966 -------------------- 299.69

(3) Dougherty was active in the organization of Wheel Sports and received 500 shares of Wheel Sports stock—par value $10.00 per share—for his organizational services. He was elected president of Wheel Sports on September 17, 1964, and on June 27, 1965, he became a member of the executive committee. Dougherty served in both of the above capacities until November 22, 1966, at which time Wheel Sports went into receivership. Under the corporate by-laws Dougherty, as president, was provided with general supervisory power over the corporate affairs and activities of the other corporate officers. He was also, under the by-laws, given the power to execute checks on behalf of the corporation and did so on occasion. The executive committee, of which Dougherty was a member after June 27, 1965, was given general control over the interstate activities of the corporation and was authorized to exercise the powers of the board of directors when it was impossible or inconvenient for the entire board to meet. Dougherty possessed extensive power to negotiate loans on behalf of the corporation. He did negotiate loans on behalf of the corporation, sign corporate income tax returns, and on one occasion sign a form 941 return for employee social security and income tax withholding of the corporation. Although engaged in another full time business, Dougherty devoted a considerable amount of time to Wheel Sports and was at the main corporate office on a weekly basis. He was active in the over-all management of Wheel Sports and was instrumental in the curtailment of the power of Dinsmore as general manager of the corporation and the withdrawal by Jennings as general manager of Wheel Sports.

(4) Brown was elected treasurer of Wheel Sports on May 8, 1965. Under the by-laws of the corporation, Brown was authorized to sign corporate checks and was given custody of the corporate money and securities. Brown became a member of the executive committee upon its formation on April 3, 1965, with the powers incident thereto as set forth above in finding of fact number (3). He possessed authority, along with Dougherty, to negotiate corporate loans. Although engaged in another full time business, Brown was at the main corporate office on a daily basis. He signed a large number of corporate checks, including some payroll checks. Brown played an active role in the over-all management of Wheel Sports and was in frequent contact with Dougherty and the various general managers relative to corporate business affairs.

(5) By March of 1965, Dougherty was aware that Wheel Sports was encountering financial and management difficulties. Due to these difficulties an executive committee was formed on April 3, 1965, and on June 27, 1965, at a special director's meeting, the powers and responsibilities of Dinsmore, then general manager, were limited to the local operation at Sioux Falls, South Dakota. Brown was a member of the executive committee from its inception. At the June 27, 1965, meeting, Dougherty replaced Dinsmore on the executive committee. On August 27, 1965, Dinsmore's contract as general manager was rescinded. Although the testimony is uncertain as to when Jennings assumed the position of general manager, his signature does not appear on any corporate

checks until December 15, 1965. Brown testified that he thought he knew about the unpaid withholding taxes in September or October of 1965, and that Dougherty would have known about the unpaid withholding taxes at the same time. It is undisputed that both Dougherty and Brown knew of the tax delinquency by December 17, 1965.

(6) Subsequent to the time that Dougherty and Brown knew or should have known that the taxes were not being paid on a current basis, there were sufficient corporate funds available to meet the tax liabilities.

(7) Dougherty and Brown were persons within the corporate structure responsible for the collection and payment of the withholding taxes during each of the tax quarters in question.

(8) The failure on the part of both Dougherty and Brown to collect and pay over the withholding taxes for each of the tax quarters in question was willful.

## CONCLUSIONS OF LAW

(1) All necessary procedural and jurisdictional requirements have been met by all the parties.

(2) That a 100 per cent penalty tax is imposed by 26 U.S.C. Sec. 6672 upon any person responsible for the collection and payment of withholding taxes who willfully fails to collect or pay over such tax.

■ (3) That the burden of establishing that the certificate of assessment is not correct is on the taxpayer. United States v. Strebler, 313 F.2d 402 (8th Cir. 1963).

■ (4) The word "willfully" as used in 26 U.S.C. Sec. 6672 means a voluntary, conscious and intentional act. Monday v. United States, 421 F.2d 1210, cert. den. 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (7th Cir. 1970); United States v. Strebler, 313 F.2d 402 (8th Cir. 1963); Bloom v. United States, 272 F.2d 215, cert. den. 363 U.S. 803, 80 S. Ct. 1236, 4 L.Ed.2d 1146 (9th Cir. 1959).

■ (5) The evidence is legally sufficient to support the finding that both Dougherty and Brown were persons responsible for the collection and payment of withholding taxes within the meaning of 26 U.S.C. Sec. 6672. Monday v. United States, 421 F.2d 1210, cert. den. 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (7th Cir. 1970); Bloom v. United States, 272 F.2d 215, cert. den. 363 U.S. 803, 80 S. Ct. 1236, 4 L.Ed.2d 1146 (9th Cir. 1959).

■ (6) The evidence is legally sufficient to support the finding that the failure on the part of both Dougherty and Brown to collect and pay over the withholding taxes in question was willful within the meaning of 26 U.S.C. Sec. 6672. Newsome v. United States, 431 F.2d 742 (5th Cir. 1970); United States v. Leuschner, 336 F.2d 246 (9th Cir. 1964); United States v. Strebler, 313 F.2d 402 (8th Cir. 1963); Bloom v. United States, 272 F.2d 215, cert. den. 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (9th Cir. 1959); Levy v. Tomlinson, 249 F.Supp. 659 (S.D.Fla.1965).

■ (7) With reference to the tax quarter ended September 30, 1965, the purported lack of knowledge on the part of Dougherty and Brown of the tax delinquency until December 17, 1965, does not preclude a finding of willfulness in view of the fact that during that tax quarter: (1) Dougherty and Brown were members of the executive committee which was from June 27, 1965, exercising or authorized to exercise stringent control over Dinsmore, the general manager at the time; (2) from August 17, 1965, through the end of the tax quarter, the executive committee apparently had the primary responsibility for the operation of Wheel Sports, as there was then no general manager; and (3) Dougherty and Brown were on notice of the financial difficulties of the corporation and the prior lack of efficient management, and were because of this notice not entitled to continue to rely on others for the collection and payment of the taxes. United States v. Leuschner, 336

F.2d 246 (9th Cir. 1964); Levy v. Tomlinson, 249 F.Supp. 659 (S.D.Fla.1965).

(8) With reference to the tax quarter ended December 31, 1966, the fact that Wheel Sports went into receivership before the end of the quarter does not absolve Dougherty and Brown from liability for said tax quarter, as the failure to collect the taxes due is a sufficient ground for the imposition of the 100 per cent penalty tax under 26 U.S.C. Sec. 6672. Newsome v. United States, 431 F.2d 742 (5th Cir. 1970).

(9) Judgment shall be entered in favor of the United States and against Dougherty in the amount of $7,575.16 plus interest and costs.

(10) Judgment shall be entered in favor of the United States and against Brown in the amount of $7,633.69 plus interest and costs.